Michael J. Crocenzi, Esquire
Attorney ID #66255
**GOLDBERG KATZMAN, P.C.**
320 Market Street
P.O Box 1268
Harrisburg, PA 17108-1268
Telephone: (717) 234-4161
Attorney for Defendants BRT, Inc. and Harold Mast

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHAEL J. LIBERATI | : | CIVIL NO. CV 05-1661 |
| Plaintiff | : | |
| v. | : | JURY TRIAL DEMANDED |
| | : | |
| BRT, INC. & HAROLD | : | |
| MAST, President | : | |
| Defendants | : | |

### DEFENDANTS' PRE-TRIAL MEMORANDUM
### PURSUANT TO LOCAL RULE 16.1(c)

1. The Plaintiff, Michael J. Liberati (hereinafter "Liberati"), filed a Complaint against BRT, Inc. (hereinafter "BRT"), and Harold Mast on April 8, 2005. Liberati alleged that the Defendants violated the Americans with Disabilities Act (ADA), and the Pennsylvania Human Relations Act (PHRA). Liberati also included a count for intentional infliction of emotional distress. The Defendants filed a timely Answer to the Complaint denying the material factual allegations and conclusions of law in the Complaint.

2. Liberati applied for and was then hired as a dispatcher for BRT on July 23, 2001. BRT is a trucking company, which primarily transports fuels. As a dispatcher, Liberati would check drivers' schedules, monitor fuel inventories,

take and make phone calls to drivers and customers, handle emergencies from customers and drivers, and make sure that the drivers' work went as smoothly as possible.

During the Spring of 2002, BRT re-organized its dispatch team. Up to that time, Dan Mast, Dan Robbins, Wayne Lapp, and Harold Mast typically performed routing duties. Routing involved developing a particular driver's route for a shift to maximize efficiency and customer satisfaction. BRT asked Mr. Liberati and three other employees to become routing dispatchers. Dan Mast and Wayne Lapp trained Liberati to perform the routing duties. BRT organized its drivers and dispatchers into zones. Zones 1 and 2 operated out of BRT's main office in Parkesburg, Pennsylvania, where Liberati worked. Zone 1 included areas outside of Philadelphia and the surrounding counties. Zone 2 included Philadelphia and the surrounding counties. There were basically two shifts which covered the two zones 24 hours per day, 7 days per week. There was a dayshift and a nightshift. The shifts typically overlapped on each end of the shift. Each zone would have a dispatcher and a router/dispatcher for each shift. Liberati worked in Zone 2 during the nightshift. His shift time was from 1:00 p.m. to 1:00 a.m. He typically worked a four on, four off schedule, which would sometimes include a weekend. During his nightshift, Liberati routed for the next dayshift drivers. When Liberati was not performing his routing duties, he would help out the dispatcher on duty.

Between the time Liberati started working as a router and November 12, 2002, his only complaint to his supervisor, Dan Robbins, was that it sometimes took him longer than his normal shift time to complete the routing work, especially when it was busy. This did not happen during every shift. Dan Robbins told Liberati that if he had to stay longer than his normal shift time, he would be allowed to arrive late the next day, so long as he informed Mr. Robbins ahead of time that he would not be starting on time. Liberati never complained to any supervisor member that he was unable to perform the essential functions of a router. Dan Mast, V.P. of BRT, thought Liberati did an excellent job as a router.

In 2002, BRT was using a proprietary software system to handle the company's dispatching functions. This system was called BRAVO. BRAVO consisted of a set of three smaller programs, which related to one main database. Id. Liberati created his own "custom" system, which was basically an unauthorized fourth file or program. The BRAVO system was an unstable program and corruption of data was common. BRT tried to minimize the corruptions by carefully creating links to the main database. When a corruption occurred, everyone had to exit the system and the repair took anywhere from 10 to 30 minutes with the possibility that some data could be lost. Id. BRT management noticed that the number of corruptions increased when Liberati was working. Id.

BRT's computer consultant, Jason Waters, discovered Liberati's custom program. Id. Jan Thies, BRT's H.R. Director and Computer Network Manager, then told Liberati in the Spring of 2002 that he could not use his custom program. Liberati told Mr. Thies that he would stop using it. Id.

On October 23, 2002, Dan Robbins held a general meeting with all dispatchers and router/dispatchers indicating that tardiness was a problem and that all employees needed to start on time. On November 6, 2002, Liberati failed to notify Dan Robbins that he would be late for his shift, which began during the afternoon on November 6, 2002. Liberati was nearly an hour late for his shift. When Liberati finally arrived for his shift, he had a meeting with Dan Mast, Wayne Lapp, and Dan Robbins. Wayne Lapp was the terminal manager for BRT. Mast, Lapp, and Robbins reprimanded Liberati for being an hour late for his shift and for failing to notify Dan Robbins that he would be late. Later during the shift, Lapp gave Liberati a written warning concerning this incident. Id.

During the meeting on November 6, 2002, Liberati shared with the management team that he was having difficulty finishing his work during his shift. The management team told him to focus on the routing and let the other dispatcher handle the dispatching duties. During his shift on November 6, 2002, Liberati was working with dispatcher Vince Sciotti. Mr. Sciotti was overwhelmed at one point during his shift with phone calls and requested Liberati's assistance. Liberati

declined and told Mr. Sciotti that he needed to finish his routing work first. Sciotti and Liberati then got into a verbal altercation, which was then reported to Dan Robbins the next day.

When Liberati arrived for his shift on November 7, 2002, Dan Robbins, Dan Mast, and Jan Thies met with Liberati. They told Liberati that he needed to help out his fellow team member if the team member requested help. Liberati asked to perform his routing duties in a different location from the dispatch area. Lapp gave Liberati a letter dated November 7, 2002 memorializing the verbal warning BRT management gave to Liberati for the incident that occurred during the shift on November 6, 2002.

Liberati then sent a letter to Harold Mast, President of BRT, on November 12, 2002. In his letter, Liberati stated for the first time that he had a diagnosis of attention deficit disorder (ADD). Id. Because of his ADD, it was difficult for him to complete the routing tasks during his shift. Id. He requested that he be allowed to perform his routing duties in another office where distractions could be minimized. Id. This was the first time Liberati had ever shared with management at BRT that he had ADD and that he was having difficulty finishing his work during his shift because of the ADD.

Within a short time after November 12, 2002, Wayne Lapp and Dan Mast met with Liberati to discuss his request to perform routing in a different location than the dispatch area. Wayne Lapp told Liberati that he could perform his routing duties in a different location, but when he was finished with the routing duties, he needed to be in the dispatch area. Dan Mast suggested that Liberati perform his routing duties in Jan Thies' office. Liberati performed his routing duties for one shift in Jan Thies' office. The next day, Jan Thies informed Dan Mast that there was highly sensitive personnel information in his office and that it would not be advisable for Mr. Liberati to have access to that information. Liberati admitted that he could even hear the phones from Jan Thies' office and he would leave his routing work and go answer the phones in the dispatch area. Other unoccupied offices were located further away from the dispatch area than Mr. Thies' office. Dan Mast and Wayne Lapp decided that routing was a function of dispatching and that the router needed to be in the dispatch area because events during the shift could significantly affect the routing for the next shift. Liberati continued to perform his duties as a router/dispatcher during the nightshift for Zone 2.

On December 10, 2002, Wayne Lapp gave a written warning to Liberati regarding Liberati's use of his own program in the BRAVO system, despite BRT's instruction for him not to use it. Management agreed to incorporate some of Liberati's program into the BRAVO system, but he was specifically told not to use

his own program ever again. Id. Liberati acknowledged the written warning and even indicated on the form that he intended to comply with the instructions.

On December 16, 2002, BRT management discovered that Liberati had copies of e-mails on his computer system for which he was not the recipient or sender. The majority of the e-mails were either from or intended to management team members. Jan Thies also checked to determine if Liberati was once again using his program within BRAVO. Mr. Thies discovered that on December 11, 2002 and December 12, 2002, Liberati accessed his program. Harold Mast, Dan Mast, Wayne Lapp, and Jan Thies met to discuss the violations and made a unanimous decision to terminate Liberati's employment with BRT effective December 16, 2002. When the management team met with Liberati on December 16, 2002 to discuss the grounds for termination, Liberati did not provide any defense.

3. The Defendants are not seeking damages.

4. The Defendants plan to call the following witnesses regarding liability:

    1. Harold Mast
       BRT, Inc.
       813 North Octorara Trail
       Parkesburg, PA 19365

  2. Daniel Mast
    BRT, Inc.
    813 North Octorara Trail
    Parkesburg, PA 19365

  3. Jan Thies
    BRT, Inc.
    813 North Octorara Trail
    Parkesburg, PA 19365

  4. Daniel Robbins
    BRT, Inc.
    813 North Octorara Trail
    Parkesburg, PA 19365

  5. Wayne Lapp
    225 Old Wilmington Road
    Coatesville, PA 19320

  6. Jason Waters
    H2OS Inc.
    3750 Country Lane
    Gordonville, PA 17529

5. The Defendants plan to offer the following Exhibits at trial:

  1. Liberati's Application for Employment with BRT with attached resume.

  2. The Omnia Profile Worksheet completed by Liberati.

  3. Liberati's Acknowledgement of Receipt of BRT Drivers Handbook and BRT Policies and Procedures Manual.

  4. BRT Policies and Procedures Manual.

  5. Dispatch Compensation Policy.

  6. Job description for dispatcher.

       7. BRT Information Systems Policy.

       8. Liberati's Acknowledgement of Receipt of Information Systems Policy.

       9. November 6, 2002 disciplinary letter to Liberati.

      10. November 7, 2002 disciplinary letter to Liberati.

      11. November 12, 2002 letter from Liberati to Harold Mast.

      12. December 10, 2002 disciplinary letter to Liberati.

      13. December 12, 2002 e-mail from Liberati to Jan Thies.

      14. December 12, 2002 e-mail from Jan Thies to Liberati.

      15. Screen shots that show Liberati accessing unauthorized file in BRAVO (7 pages).

      16. Screen shots of e-mails found on Liberati's computer.

      17. December 16, 2002 termination letter.

      18. Report from Jason Waters dated January 20, 2006.

      19. BRT Reorganization Plan and Timetable.

      20. Memo from Wayne Lapp regarding move of dispatch function.

6. The Defendants believe trial will take 3-5 days.

7. The Defendants' Motion for Summary Judgment is pending.

        Respectfully submitted,

        GOLDBERG KATZMAN, P.C.

        /s/ Michael J. Crocenzi
        Michael J. Crocenzi, Esquire
        Attorney I. D. No. 66255
        320 Market Street
        Harrisburg, PA 17108

131431 1

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that I served a true and correct copy of the foregoing document upon all parties or counsel of record via electronically filing on the 17th day of February 2006 and, addressed to the following:

John N. Hickey, Esquire
20 West Front Street
Media, PA 19063

Sharon A. Zeigler, Esquire
5118 Foxfire Trail
Kingsport, TN 37664


GOLDBERG KATZMAN, P.C.


By:  s/ Michael J. Crocenzi
     Michael J. Crocenzi, Esquire
     320 Market Street, Strawberry Square
     P.O. Box 1268
     Harrisburg, PA   17108-1268
     (717) 234-4161
     Attorney I.D. #66255
     Attorneys for Defendants, BRT, Inc.
     And Harold Mast

Date: February 17, 2006